Lipscomb, J.
The appellant has assigned for error:
1st. That the District Court erred in excluding the evidence of Win. II. Jones, offered on filio trial of this case.
2d. That the District Court erred in affirming tlie decree of the probate-court upon the testimony offered.
3d. That the District Court erred in refusing to render a decree establishing ’a nuncupative will, and directing tlio iirobate court to admit it to probate.
*61 The proceedings wcie commenced by Jones, the rejected witness, lor a t of adminisi ration to him with the will of David Williams annexed; and he asked the court to permit the nuncupative will of Williams, in favor of his, witness’s, wií.t. to be proven, and admitted to probate. And it was on the on whether there was any such will that he offered himself as a witness o estábil -h ! lie will. That he was not a competent witness, is a question too (lain to a-inil. oil any controversy. And the objection claims a higher ground for its support than any pecuniary interest could place it on. (See 1 Phil.Ev., sec. Ill, (ii), Ciuv. & Hill, Ed.)
What is required to constitute a valid nuncupative will, is found in article 11 Id, Vail. Dig.; and it is the 4th section of the act of March 20th, 1848. It is as foliotes, i. It is declared that no nuncupative will shall be probated “unless it ii > made in the time of the last sickness of the deceased, at his or -“her habilaiion, or where he or she hath resided for ton days next preceding, “except where the deceased is taken sick away from home, and dies before ho “or she ref urns to such habitation; nor shall any such will be probated, unless “it be pwn-d by three credible witnesses that the testator or testatrix called “ on some person to t ake notice or bear testimony that such is his or iter will, or “words of like, import.” It is proven, that, in several conversations, the deceased declared that if he should die, he wished Mrs. Jones to have all that he had; h<‘ vi lied it to belong to her, and not go to the State, county, or anybody else; ih-’.f he, might some time go to the bottom of the bay. The last of these, convers.d ions took place at the house of Jones, in the presence of the family, some ’inte, in December, 1831, and he was supposed to be drowned 20lh February, following. This conversation was proved by three witnesses: the sister, the son, ami the daughter of Mrs. Jones. It was proven that the deceased was employed in carrying the mail in a boat, across the bay of Aran.-as, a, distance of about twelve miles; that lie liad no fixed place of abode, in! usually staid at Jones’s house when on San Joseph’s Island, and spent his JfVibbaths there; that lie was in fine health, and some of the witnesses thought, he promised to out-live Mrs. Jones. Similar conversations were proved by a mther witness to have frequently taken place between witness and deceased, on hoard his, witness’s, boat.
The statute is restrictivo in its terms ; and no nuncupative will can be sustained, only in the cases provided; and proven in the manner prescribed; as it is an ac’.cuowl< Iged rule of law that where the statute specially directs liow proof mr.,f be made its directions must be followed. The objections to the of the to constitute the declarations of the deceased a nmir.upaAve v ill, are, that it scarcely in a single iustance comes within the provi 'Ions of ihe statute. No witness was called upon by the deceased to bear witness that ho was then making his will. It was long before Ms death, when in good health, these conversations took place. These conversations seem to have, been designed as manifestations of his great regard for Mrs. Join's; but he. does not seem to have been under any apprehension of imme-diat or of an early death. The remark that he expected some day to go to the .bottom of the. bay was more commonplace, idle talk, than anything else. He had ampl" time to have made his will in writing-; and there is nothing shown in evidence why lie did not make it. The means were at hand at the very time he is said to'have used the remark attempted to be set up as a nuncupative will. One of the witnesses swears that, at that time, when the deceased made the remarks at the house of Mr. Jones, lie, Mr. Jones, was present, engaged in some writing for the deceased. Nuncupative wills had their origin in the suddenness ami urgency of the occasion, where there were present no means of making a formal written will, and no time for delay. And among all civilized natkm's where ¡.he necessity has been apparent, nuncupative wills have, under soni" regulations, been allowed. But the danger of fraud in setting up such wills has always exacted full and satisfactory proof of the existence of the necessity; and where we have a statute regulating such wills, there is the same reason why wc should require its conditions and requisites to he satisfactorily *62 marie out. The necessity of being (vims cautious, and requiring the proof to he made out according to the statute is not lessened by the features of this ease. The free and social conversation of the deceased is proven by the sister, the daughter, thirteen years of age, and the son, still younger, of the beneficiary, had it been sustained as a nuncupative will. We find no error in the judgment ; and it is affirmed.
Judgment affirmed.