ASA MITCHELL, GUARDIAN, V. J. AND E. V. VICKERS.

Nuncupative wills are not favorites of the law; and it is a well established rule, that strict proof is required, of all the requisites prescribed by the law.

It may be laid down as a general rule, that the testimony of the witnesses (to a nuncupative will) must agree, at least substantially, as to the words spoken or the dispositions made by the deceased.

It was manifestly the intention of the statute, that such will (nuncupative) should be proved by three witnesses; and although two of the witnesses testify in substance, with perhaps one variance, to the same bequests and dispositions; yet some of the material legacies or directions are not sustained by the testimony of the other witnesses.

Appeal from Bexar. Tried below before the Hon. Thomas J. Devine.

On the 5th September, 1855, Mrs. Amacetta M. Cooley died at San Antonio, in a house where she had then been residing for two years, leaving a sister, Mrs. Emeline V. Wells, since intermarried with James Vickers, as her next of kin; a niece, Susan Wells; and a step-son, Simeon Cooley, whom she had raised from infancy, and who was then a small boy. She was a widow.

On the 26th October, 1855, Thomas A. Smith filed a petition in the County Court to establish a nuncupative will of the said deceased, and to obtain letters testamentary as executor of said will. General notice to the heirs was published; and Asa Mitchell appeared as guardian for the boy Simeon Cooley, and joined in the prayer, as one of the legatees. At the December Term the proof was taken, and the nuncupative will established and admitted to record upon the following testimony:—

Personally appeared in open Court on this 3d day of January, A. D. 1856, A. W. Desmuke, who being duly sworn, upon oath saith that he was acquainted with Mrs. Amacetta M. Cooley during her lifetime, that she is now dead, that she died at her residence in the city of San Antonio; I think she died on the 5th day of October last, may have been the fifth of September, I do not recollect now; she made some declarations; she said that she wished her sister Mrs. Wells to have a choice tract of land out of her lands, such piece as Mrs. Wells might choose, not

naming the number of acres; she then stated, that she wished her niece Susan Wells should have choice of all her negroes, one negro, not naming the age or sex; then she further stated that she wished her sister Emeline, after her debts were paid, to have the use of all her negroes and other property until Simeon Cooley came of age, she said Simeon her boy, who was standing beside the bed, meaning Simeon Cooley, free of charge; after Simeon became of age, she wished him to have all her lands and negroes, except what she had given to her sister and niece. She then stated that she wished her sister to have charge of Simeon until he became of age; that is all the substance, except I suggested that she ought to select some one to act as her executor; she looked about and saw Parson Smith, and she then appointed him to be her executor. She asked him if he would accept; I believe (I think) after some little hesitation, he said he would. I believe that is about all that I recollect. The foregoing declarations were made during Mrs. Cooley's last illness and where she had been residing more than ten days. I was her attendant physician; she has always resided there since I knew her; I suppose it was her residence, as I always found her there. It is the same house where Mrs. Wells now resides. She sent for me, or some person came for me. When I came to her house, she said she had sent for me to hear her statement as to her will; she then stated that she had made a statement before to Parson Smith, Miss Hale, a Mr. Russy or Rossy, who lives right opposite of there. She then stated that she wanted to make the same statement to me that she had made to them, as she wished me to be one of the witnesses. There was present when this statement was made to me, Mr. Smith, Miss Hale, and several ladies and gentlemen, I do not recollect exactly; I do not know whether Mr. Russy was present or not; am not certain, as he was then a stranger to me. Witness considered that Mrs. Cooley was of sound mind at the time; he has other reasons for thinking so, than his mere judgment. Some two or three weeks before, she stated to witness that she intended to make her will. He advised her to send for her lawyer and have it done at once, as life was uncertain, and her situation was critical. She stated to him what she intended doing with her property; she made the same disposition in substance as he had stated; she told me the reasons that she wished to give her sister a portion of her property was, that she was a widow and had a good many children to raise, was poor, and had

been very kind to her, and most devotedly in her sickness; and that Susan, her niece, had also been very kind and attentive to her, in her sickness, at all hours of the night, and that the little boy was her husband's child, she having no children of her own; she having had him from the time that he was an infant, he felt as near to her as if he had been her own child; and after providing for her sister and niece, she wished to give him the balance of her property—that was Simeon. She also stated that she wished to arrange it so as that Mr. Cooley's relations should have nothing to do with the property or child, as she did not think they were good people, and had acted very unkindly towards Mr. Cooley in his lifetime, and after his death much more unkind towards her. I now recollect another statement that she made on the evening of her will. After she had concluded her statement as to her will, she said she wished to be buried beside Mr. Cooley. Miss Hale is now dead; she died since Mrs. Cooley. Where I have stated Mrs. Wells in the foregoing, Mrs. Cooley always stated "my sister Emeline," referring to Mrs. Wells. For the purpose of refreshing my memory, I wrote the substance of Mrs. Cooley's statements down in a book I have at home, the next morning after she had made them.

Also on this 3d day of January, A. D. 1856, personally appeared in open Court, David Russy, who being duly sworn upon oath saith : I was acquainted with Mrs. Cooley before and at the time of her death ; she died in my house right opposite to where I live, in the city of San Antonio, in September or October last. She hired the house from me ; she had been residing in this house about two years. She made some declarations during her last sickness relative to the disposition of her property; she said she wished Mrs. Wells should have a piece of land, she did not state where; she wished Mrs. Wells would take charge of all the negroes; she wished Mrs. Wells to take one of the best negroes. I understood that she wished the little boy Simeon to have all of the property, except what she wished Mrs. Wells to have; he is not certain whether Mrs. Wells was to have the negro for herself or for her daughter Susan; did not understand well. I was present with Doctor Desmuke, and she said that she had told Doctor Desmuke the same as she had stated to him, the witness, before. She told Doctor Desmuke that she wanted him to be a witness. Miss Hale was present and other ladies ; I do not know their names. She called witness two or three times in two or three minutes, and asked him to be a witness. Miss Hale is now dead.

Also on this 3d day of January, A. D. 1856, personally

appeared in open Court, Pelaskia Johnson, who being duly sworn upon her oath saith : I was not acquainted with Mrs. Cooley. I was present about half an hour previous to Mrs. Cooley's death and heard Mrs. Cooley say that she wished Mrs. Wells to have a tract of land on the Cibolo for her and her family. I was not called upon to bear witness, nor did I hear her call on any other person to bear witness. She asked Mr. Garrahy if he heard what she said; he answered yes; she said she wished her sister to have choice of her colored servants; I understood she was to have one servant—her choice—as near as I can recollect; and she said likewise she wished her little boy to stay with his aunt, as that seemed to be his request; she meant Mrs. Wells, she being then by. I heard nothing more. Miss Hale, Doctor Desmuke, Parson Smith and others were present. I did not know them. Miss Hale is now dead.

I was standing right at the foot of the bed. Mrs. Cooley called upon Parson Smith to sing a hymn. I did not hear her call on any one to bear witness. I left there a few minutes before Mrs. Cooley died. Mrs. Cooley, when I left, was praising God and clapping her hands. Doctor Desmuke and Parson Smith were present when I went into the room.

Also on this 3d day of January, A. D. 1856, personally appeared in open Court Thomas A. Smith, who being duly sworn, upon his oath saith : I was acquainted with Mrs. Cooley, and visited her several times, frequently, several months before her death, particularly for a month or two previous to her death; she died at home in San Antonio, the early part of September, I think the 5th September last. She made some declarations relative to her property; she sent for me, and when I came she said she was going to die, and wished me to take notice of the disposition that she was going to make of her property; at the same time she called upon Mr. Russy to take notice, and I think also Miss Hale, but I am not positive; Miss Hale was sitting by her side; she said that she wished Mrs. Wells to take choice of a tract of her land, without mentioning where, or what sized tract, and she wished Susan Wells to take choice of a negro servant from among her negroes, and that she wished her sister to keep her property together and take charge of Simeon and raise him, and that when he became of age to have the balance of her property. After a pause for a moment, I asked her if she had thought of any one to manage her business; she said she wished me to undertake to settle her business and keep it out of other

people's hands. I told her that I would if I was competent. She mentioned that she wished it to be kept out of the hands of Mr. Cooley's connections. When she called Mr. Russy and Miss Hale, (after she had stated what is here related,) Doctor Desmuke came in, and she again reiterated what she had previously stated, still calling upon us to take notice, and she called upon Doctor Desmuke also to take notice. There was a number of ladies present; some seven, eight or ten. Just as soon as she had got through with Doctor Desmuke, Mr. Garrahy came in. Miss Hale is now dead. I attended her funeral; she died since Mrs. Cooley. This declaration was made about two hours previous to her death, and where she had resided for more than ten days previous. She was sane, and continued rational until her death; I never saw any person more so, that is, a person who was afflicted and in a dying condition; she made no other disposition at that time, that I recollect of.

Also on this 3d day of January, A. D. 1856, personally appeared in open Court, Patrick Garrahy, who being duly sworn, upon oath saith: at the time that I arrived at her house, it seems that she had got through with her will, and I was witness to nothing in regard to it; her sister Mrs. Wells told her that I was present; Mrs. Cooley asked me if I was listening to what she was saying; I told her I was; she made some attempt to make some remarks, but the pain seized her, so that I could not understand what it was. She recovered finally, and Mr. Smith asked what disposition she had made as regards the care of Simeon. I do not recollect definitely what she said, but I think she said she wished him to do as she had already told him. I do not recollect of anything else she said whilst I was there.

Thomas A. Smith renounced all claim to the "fees or executorship of said estate," and declined to take any action in the estate.

The decree of the County Court was as follows:—

It is considered by the Court, that the testamentary words as spoken, be established as the last and nuncupative will of said deceased. And that after all debts for the payment of which said estate is chargeable, are paid, then the said Emeline V. Vickers, sister of deceased, have for herself, her heirs or assigns in fee, her choice of a tract of land from any of the lands of said deceased, and that Susan Wells, niece of deceased, have for herself, her heirs or assigns in fee, her choice of a negro slave from the negro slaves of deceased, and that Simeon Cooley, a minor,

have the residue of said estate, both real and personal, in fee, for him, his heirs and assigns forever; and that the said Mitchell, guardian as aforesaid of the estate of said minor, be placed in possession of said property, both real and personal, and together with the rents and profits thereon, and hold the same subject to the order of this Court, for the benefit of said minor.

On the 9th of February, 1856, before an administrator was appointed, this suit was commenced by Emeline V. Vickers, formerly Emeline V. Wells, joined by her husband, for a revision, by certiorari, of the proceedings of the County Court, and to have said pretended will wholly set aside. Thomas A. Smith and Asa Mitchell, guardian, were cited as defendants. A jury being waived and the cause submitted to the Court upon the testimony taken in the County Court, and the uncontroverted facts already stated, judgment was rendered, dismissing the suit as to Thomas A. Smith, and setting aside the probate of the nuncupative will, and vesting the estate in the said Emeline V. Vickers. No objection was made, that Susan Wells was not cited as a defendant in this suit.

*Hewitt & Newton,* for appellant. It is not denied, but that the forms of the law were followed out by the Probate Court, in the case at bar. It is not pretended that the witnesses swore falsely. It is clear that the deceased intended to devise her estate. Indeed this fact is not denied in petition. Then the only questions are, whether her intentions can be arrived at from the statements of the witnesses, and whether the decree of the Probate Court is an expression of that intention. That there was a will, there is no doubt. The witnesses cannot be mistaken in their statements. So far as they are concerned, there is nothing to revise. The Court may have been mistaken in his judgment upon those statements. That judgment might have been revised in the District Court, and a proper decree entered if the former was erroneous, but the proceedings should not have been set aside as to the evidence or "proof" of a will. Hart. Dig. Art. 1116, 1136, 807, 808, and 809, prescribes what shall be proof before the District Courts in cases of the kind at bar. It is the transcript of the statements of the witnesses made in the Probate Court. This was before the District Court, and a decree should have been entered upon it, finding and recognizing the intention of the testator. It is submitted, that this Court hav-

Mitchell v. Vickers.

ing all the evidence before it, and a jury being waived in the Court below, will enter such decree as should have been entered by the District or Probate Court.

Without stating the proposition, we have argued the sufficiency of the evidence establishing a will, and the error of the District Court in the proceedings thereon.

And in conclusion we may suggest, that the Probate Court was correct in its conclusions; for all the witnesses concur in stating that there were but three parties to be benefited by the testator, to wit: Simeon Cooley, the minor, Mrs. Wells and her daughter Susan. All the witnesses concur in stating, that Simeon was to have all the estate of the testator except one tract of land and a negro; all concur in stating that Mrs. Wells was to have her choice in a tract of land, and there is no conflict in their statements, that Susan was to have her choice of a negro. And all this evidence is the more satisfactory, when the witnesses concur in giving the reason assigned by testator for thus disposing of her property. We have simply referred to the statute for the law governing this case, as we know of no case arising under it having been before this Court for adjudication. But it is well settled, aside from this, that mere irregularities or technicalities should not be permitted to defeat the intention of the testator.

*Waul & Cleveland,* for appellees. I. The statute of 29 Car. 2d, authorizing nuncupative wills, has been adopted, with slight modifications, in most of the States of the Union; and the general principle, as adjudged in the case of Jones v. Newton, (10 Tex. R. 120,) is of universal application: That when duly proved they are equally entitled to be established with written wills; yet they are not favored by Courts; and a strict compliance with the statute is rigidly enforced. (Hart. Dig. Art. 1113; 1 Lomax on Executors, 37; 1 Jarman on Wills, 88; Modern Probate of Wills, 304; Woods v. Ridley, 27 Missi. 111.)

II. The Probate Judge by his decree has made a will for the intestate totally different from the will attempted to be established by any of the witnesses; in this, that it takes from the appellee all of the property which was to be left in her possession, free of charge, until Simeon became of age.

III. The decree attempts to reconcile conflicting testimony, and to establish a will proved by the testimony of one witness totally different from the will as testified to by other witnesses.

IV. The proof upon the trial of the cause is not sufficient to establish a nuncupative will, as required by the statute.

1st. It is not proved by three witnesses, as the law directs, that the intestate called upon any person to attest that she was about to make her will, and without the *rogatio testium* it would be void. (Winn v. Bibb, 3 Sedgw. 140; Tally v. Butterworth, 10 Yerg. 501; Johnson v. Glass, 2 Ala. R. 248.)

2d. If the will was not attempted to be made at different times, the disposition of the property as testified to by the witnesses, was conflicting and irreconcilable.

3d. The will was not attempted to be made. When taken suddenly she had sufficient time to make a will. Her disease was chronic, as was shown by the testimony; and therefore the nuncupative will would have been void. (Prince v. Hagleton, 20 Johns. 505.)

4th. If duly proved in other respects, it would have been void as to the real estate. (1 Lomax on Executors, 39.)

HEMPHILL, CH. J. Nuncupative wills are not favorites of the law. But as they are authorized by the statute, they must, when duly proved, be allowed and established. They are hedged round with numerous restrictions, to guard against the frauds for which oral wills offer so many facilities; and it is a well established rule, that strict proof is required of all the requisites prescribed by the law. (2 Greenleaf, 298; 4 Rawle, 46; 20 Johnson, 502; 1 Jarman on Wills, 89; Modern Probate of Wills, 304.)

The provision of the statute (Hart. Dig. Art. 1113,) is essentially a copy from the statute of frauds of the 29 Ch. 2, Sect. 19–21; and in substance the same provision is found in the codes of most of the other States; and everywhere a strict construction has been applied.

It may be laid down as a general rule, that the testimony of the witnesses must agree, at least substantially, as to the words spoken, or the dispositions made by the deceased. There can be no will, no disposition of the property, if the witnesses cannot concur as to what, in substance, was such disposition. It was manifestly the intention of the statute, that such will should be proved by three witnesses; and although two of the witnesses testify in substance, with perhaps one variance, to the same bequests and dispositions; yet some of the material legacies or directions are not sustained by the testimony of the other witnesses.

Dr. Desmuke testifies that Mrs. Wells (who was the sister of the deceased, and her heir-at-law) was to have a choice tract of land, out of her lands generally, without referring to size or location. Her niece Susan, the daughter of Mrs. Wells, to have a choice of her colored servants; that her sister, Mrs. Wells, after payment of the debts, was to have the use of all of her negroes and other property, free of charge, until Simeon Cooley should come of age, when she wished him to have all her lands and negroes, except what was given her sister and niece.

The testimony of Mr. Smith is substantially the same, though there might be a question whether, under his evidence, Mrs. Wells would not be responsible for the profits of the property during the minority of Simeon Cooley; and if so, there would be a material variance from the evidence of the previous witnesses.

Another witness testified that the deceased wished Mrs. Wells to have a tract of land, without saying where, and that she would take charge of all the negroes, and to take one of the best of the negroes; that the little boy Simeon was to have all of the property except what she wished Mrs. Wells to have. Was not certain whether Mrs. Wells was to have the negro for herself or her daughter Susan. Here nothing is said about the lands of the deceased, nor how long Mrs. Wells was to have charge of even the negroes, and whether free of charge or not. Nor is it certain whether Mrs. Wells or her daughter was to have the negro.

Another witness testifies that Mrs. Wells was to have a tract of land on the Cibolo, and was to have choice of her colored servants, and that the little boy should stay with his aunt, Mrs. Wells. By this witness there was some certainty as to the location of the land, and Mrs. Wells was to have choice of servants, and not her daughter.

This evidence does not sufficiently establish what in fact was the disposition or intention of the deceased. There is too much discrepancy and conflict, for the words spoken to be regarded as the last will of the deceased, or sufficient to change the order of descent, and divert the property from the channel marked by the law.

In Mason v. Deerman, 1 Munford, 456, there were notes taken from the dictation of the testator as to his intentions. A draft of the will was taken from these notes, but the deceased had then become delirious, and it was held that the notes and draft could not be set up as a written will, but the notes might be ad-

mitted to record as containing the substance of a nuncupative will, and a distinction was taken between the notes and the draft, the latter having left out one of the dispositions which was directed in the former, and it was held that the notes should be established as the will of the deceased.

Judgment affirmed.