ELIZA McCLAIN ET AL V. WILLIE ADAMS (RE ESTATE OF ANNIE DOUGLAS, DECEASED.)

No. 7579. Decided January 15, 1941.
(146 S. W., 2d Series 373.)

*Gordon, Sharfstein, Bell & Weinert,* of Beaumont, for plaintiffs in error.

The undisputed evidence failing to show any testimony tending to establish that there did not exist time nor opportunity at and after the speaking of the words offered as a nuncupative will, the probate should be denied, proponent having failed to discharge the burden of showing that the words were uttered in the time of the last sickness of the deceased as required by law. Hunt v. White, 24 Texas 643; Jones v. Norton, 10 Texas 120; 1 Underhill on Wills 238.

*David E. O'Fiel, Jack M. Moore* and *John H. Beckenstein,* all of Beaumont, for defendant in error.

The term "last sickness" as applied to the fact of this case means not "in extremis" but the last sickness of deceased, which had progressed to such a point that she expected death at any time, was liable to die at any time, and, in view of its occurrance, and as preparatory thereto she made her verbal will during her last sickness from which she died two days later. Godfrey v. Smith, 103 Mo. 450; McLean v. Breen, 219 S. W. 1089; Harper v. Adams, 82 S. W. 246.

MR. JUDGE HICKMAN delivered the opinion of the Commission of Appeals, Section A.

The subject matter of this litigation is an alleged nuncupative will. Annie Douglas, deceased, was the alleged testator; Willie Adams, defendant in error, was the proponent in the probate court and Eliza McClain and others, plaintiffs in error, the next of kin of the deceased, were the contestants. The county court of Jefferson County sustained the contest and denied the probate. On appeal the district court of that county entered judgment admitting the alleged will to probate, which judgment was affirmed by the Court of Civil Appeals. 126 S. W. (2d) 61.

One of the requisites of a nuncupative will, as prescribed by Article 3346, R. C. S., is that, "it be made in the time of the last sickness of the deceased." As we understand the position of plaintiffs in error, they concede that the trial court was warranted in finding that all other statutory requisites of a nuncupative will were met and complied with. Their sole contention here is that, as a matter of law, the words uttered by the deceased which are claimed to constitute her will were not uttered during her "last sickness" within the meaning of those words as used in the article above referred to. The case turns upon our decision of that single question and our statement will therefore be limited to such facts as are thought to be relevant thereto.

Annie Douglas, the alleged testator, died on September 8, 1934, at the age of more than sixty years. During the four years next preceding her death she had "spells." Dr. R. N. Miller, a witness for the proponent, began attending her professionally in June, 1934. In his opinion the original cause of her condition was malaria, but the immediate cause of her death was "aortic insufficiency," which he explained to be a weakened condition of the heart and aorta. The "spells" about which the other witnesses testified were in the nature of fainting spells brought about, according to the evidence as we understand it, by the general weakened condition of her heart. The words claimed to constitute a nuncupative will were spoken by the deceased at about 4:30 p. m. on Thursday, September 6, 1934. The proponent and four other witnesses were present in her bedroom at that time. One of the witnesses, Berttrue McDaniel, went to the home of the deceased to pay her some rent. He testified that he stayed there about two hours, and that while he was there she said to him:

"Mr. McDaniels, I am feeling not very well at this time, and I know that I am going to die," and says 'I want Willie Adams to have everything that I possess, and land and money.' She says 'She is the only one stood to me in my sick hour at my bedside.' Says, 'I haven't any relatives at all.' "

"She called your name and said that?
"Yes, sir, said 'Mr. McDaniels.' "

Thereafter, on September 12, 1934, the witness committed the substance of the testimony to writing, his written memorandum being as follows:

" 'Beaumont, Texas, Sept. 12, 1934.
"On the 6 day of September, 1934, I was at Annie douglas home and she told me and others beside that at her death she wanted Willie Adams to have all that she had land and money and every thing else that she new she was going to die that she had no kin and she was the only one that sat at her bed side and waited on her and she wanted her to have all her estate at her death

Berttrue McDaniel.' "

He testified that when he went to the home of the deceased he found her in bed; that when he paid her the rent she handed him a receipt therefor which she had theretofore written. His testimony with regard to what occurred on the occasion is, in the main, corroborated by the other witnesses who were present at that time. There is practically no testimony concerning the condition of the deceased from Thursday afternoon until about noon on Saturday. The proponent testified that "she had taken the bed on a Thursday. Friday she was in and Thursday she taken the bed and stayed in bed from Thursday up to Friday." That testimony probably means that deceased did not leave her home on Friday but was in bed at least a part of that day. Shortly before noon on Saturday morning the deceased went to the home of a neighbor, Julia Keegans, to get Julia to pay a water bill for her which amounted to $1.00. Deceased had only a $5.00 bill with her and Julia was unable to change it. Deceased next went to a grocery store near by and purchased some bacon and a small sack of flour. She then returned to Julia's home and gave her $1.00 with which to pay the water bill. At that time she discovered that she had failed to bring the bill with her, whereupon Julia accompanied her home to get it. The deceased carried the bacon and Julia carried the flour. Shortly after reaching home the deceased became sick. Dr. Miller was later called and he came to see her about six

o'clock that evening. She died some two hours or more thereafter.

All text writers and opinions on the subject of what constitutes "last sickness" within the meaning of statutes relating to nuncupative wills seem to agree that the leading authority upon the question is Prince v. Hazelton, 20 Johns. 502, 11 Am. Dec. 304. Of that case the author of Redfield On The Law of Wills, 4th Ed. in Vol. 1, ch. VI, Sec. 17a, wrote:

"* * * This subject came before the Court of Errors in New York, at an early day, * * * and is most exhaustively discussed by Chancellor Kent, and by Mr. Justice Woodworth. These opinions contain the substance of all the learning upon the subject of nuncupative wills, from the earliest days to that date and very little has occurred since, which could add much to the very full discussion which the subject there receives."

Our investigation has led us to the conclusion that the foregoing is still an accurate statement of the situation. Nothing has been written to date, within our knowledge, which adds materially to the discussion contained in the majority and minority opinions in that case. In fact, there have been relatively few cases before the appellate courts in this generation in which a nuncupative will was offered for probate.

In the majority opinion Chancellor Kent announced this conclusion:

"Upon the strength of so much authority, I feel myself warranted in concluding that a nuncupative will is not good, unless it be made by a testator when he is in extremis, or overtaken by sudden and violent sickness, and has not time or opportunity to make a written will."

That has become known generally as the in extremis rule. The minority opinion in that case announced a somewhat more liberal rule of construction. From that decision two lines of decisions have emerged, one based upon the doctrine that the testator must be in extremis, as announced by Chancellor Kent in the majority opinion, and the other based upon the more liberal rule announced by Justice Woodworth in the dissenting opinion, that the testator need not actually be in extremis. The majority of the courts have adopted the Chancellor Kent doctrine. Schmitz v. Summers (Miss.), 174 So. 569; O'Neill v. Smith, 33 Md. 569; Bellamy v. Peeler (Ga.) 23 S. E. 387; Page v. Page (Va.) 2 Rob. 424; Reese v. Hawthorne (Va.) 10

Gratt 548. Annotations: 20 Am. Dec. 45; 9 A.L.R. 464; 13 L. R. A. (New Series) 1092; 67 Am. St. Rep. 572.

The Court of Civil Appeals in its opinion in this case recognized the existence of both the rules above referred to, but concluded that Texas had not adopted the majority rule, and upon the theory that the minority rule was the more reasonable, it adopted and applied that rule. We cannot agree with its conclusions.

■ In the first place, this Court has approved the rule of strict construction. While the facts in the cases below cited were not like those before us, still they presented situations calling upon the court to declare the rule of construction which should govern in cases like the instant one, and the court declared it in very clear language.

In Jones v. Norton, 10 Texas 120, will be found the following:

"* * * Nuncupative wills had their origin in the suddenness and urgency of the occasion, where there were present no means of making a formal written will, and no time for delay. And among all civilized nations where the necessity has been apparent, nuncupative wills have, under some regulations, been allowed. But the danger of fraud in setting up such wills has always exacted full and satisfactory proof of the existence of the necessity; and where we have a statute regulating such wills, there is the same reason why we should require its conditions and requisites to be satisfactorily made out. * * *."

In Mitchell v. Vickers, 20 Texas 377, it is stated:

"Nuncupative wills are not favorites of the law. But as they are authorized by the statute, they must, when duly proved, be allowed and established. They are hedged round with numerous restrictions, to guard against the frauds for which oral wills offer so many facilities; and it is a well established rule, that strict proof is required of all the requisites prescribed by the law. 2 Greenl. 298; 4 Rawle, 46; 20 Johns. 502; 1 Jarmon on Wills, 89; Modern Probate of Wills, 304. The provision of the statute. (Hart. Dig. art. 1113) is essentially a copy from the statute of frauds of the 29 Car. II, sec. 19-21; and in substance the same provision is found in the codes of most of the other states; and everywhere a strict construction has been applied."

One of the authorities cited above, 20 Johns. 502, is the Prince-Hazelton case.

And in Watts v. Holland, 56 Texas 54, Chancellor Kent's opinion in the Prince-Hazelton case, was cited in support of the following conclusion announced in the opinion:

"* * * Wills of this kind, by the law, are allowed to exist, on its bare toleration, and under the shadow of its jealousy; and the establishment of them is allowed, subject to exacting restrictions and conditions which correspond in degree with its fears of their dangerous qualities. * * *."

From the foregoing we conclude that early in the jurisprudence of this State the majority rule that the testator must be in extremis was approved by this Court.

■ In the second place, we do not concur in the conclusion of the Court of Civil Appeals that the so-called liberal rule is the more reasonable. In Cancellor Kent's opinion, supra, written in 1822, reference was made to the fact that, in the ages of Henry the 8th., Elizabeth and James reading and writing had become so widely diffused that nuncupative wills were confined to extreme cases. Under the view there expressed, which is the commonly accepted view, the more widely the ability to read and write becomes diffused, the less justification exists for recognizing nuncupative wills, except in cases of necessity. With the general diffusion of knowledge at this time, we can perceive of no reason why we should depart from or vary the terms of the rule of construction as heretofore pronounced by this Court. The instant case appears to be free of the taint of fraud, but to adopt the rule pressed upon us would be to afford opportunity for fraud in many other case.

Applying the approved rule to the facts of this case, it is obvious that Annie Douglas was not in extremis when she uttered the words claimed to constitute her will. Thereafter she had the time, ability and opportunity to prepare or have prepared a written will. About that there is no dispute in the record. Certain it is that she could have attended to that matter on Saturday morning when she was able to transact business and go in person to a store to purchase groceries. The probate court did not err in refusing to admit the alleged will to probate.

It is therefore ordered that the judgments of the district court and the Court of Civil Appeals both be reversed and that judgment be here rendered that the alleged will be not admitted to probate. It is further ordered that upon receipt of the man-

date of this court the district court certify this court's judgment to the county court for observance.

Opinion adopted by the Supreme Court January 15, 1941.