JEWELL F. HARGIS v. WALKER NANCE.

No. A-6818. Decided October 29, 1958.
Rehearing overruled December 10, 1958.
(317 S.W. 2d Series 922)

1. "Section 1. That chapter 7, Volume II of the Code of North Carolina, be and the same is hereby amended by adding a subsection after section 2294 and before section 2295, as follows:

"2294 (a) That married women, and minors of the age of twelve years and upwards, are hereby authorized and empowered to become stockholders in and buy, sell, hold, pay dues on, withdraw, transfer and otherwise deal in stock in any such association in the same manner and with the same powers, right and liabilities, force and effect as though such minors or *feme coverts* were of full age or unmarried."

264

■■■■■■■■■■

*J. C. Hinsley* and *E. H. Smart,* both of Austin, for petitioner.

The Court of Civil Appeals erred in holding that there is evidence of probative force to support the findings of the jury that in speaking the words pertaining to disposition of his property just prior to his death the deceased did not speak words attempting to give property to persons other than those named in the memorandum signed by the three witnesses. Also in failing to hold that there was no evidence of probative force that there had been sufficient compliance with the provisions of the Texas Probate Code to make the alleged nuncupative will of deceased a valid will. *Jones v. Norton,* 10 Texas 120; *Mitchell v. Vickers,* 20 Texas 377.

*J. Hubert Lee,* of Austin, for respondent.

MR. JUSTICE CALVERT delivered the opinion of the Court.

Respondent is the proponent for probate of a nuncupative will of Paul M. Hargis. Petitioner, widow of the testator, contested.

The will was admitted to probate in the County Court. On appeal to the District Court, the matter was submitted to a jury on certain special issues which were answered in favor of respondent.[1] On motion duly made, the District Court rendered

---

1.—"SPECIAL ISSUE NO. 1:

"Do you find from a preponderance of the evidence that at the time of the last illness of Paul Hargis the substance of the testamentary words spoken by him were as follows:

"That of the stock in Paul Hargis' personal name in the Austin Store, fifty per cent should go to his wife, Jewel Hargis, twenty-five percent to Paul Schroeter,

and entered judgment non obstante veredicto, denying the application to probate the will. The Court of Civil Appeals reversed the District Court's judgment and rendered judgment admitting the will to probate. 311 S.W. 2d 465.

As indicated by the issues submitted to the jury, the will which respondent seeks to probate purports to dispose only of corporate stock in Hargis-Austin, Inc., with its principal offices in Austin, Texas, and in Hargis Company, Inc., with offices in Waco, Texas, Special Issue No. 1 also shows the nature and extent of the bequests which respondent claims were made. The value of the stock is in excess of $30.00.

Petitioner assigns a number of reasons why the judgment of the Court of Civil Appeals admitting the will to probate is erroneous. The principal reason assigned is that the evidence offered to prove the terms of the will does not meet the requirements of Sections 65 and 86(c) of the Texas Probate Code.

Section 65 provides:

"No nuncupative will shall be established unless it be made in the time of the last sickness of the deceased, at his home or where he has resided for ten days or more next preceding the date of such will, except when the deceased is taken sick away from home and dies before he returns to such home; nor when the value exceeds Thirty Dollars, unless it be proved by three credible witnesses that the testator called on a person to take notice or bear testimony that such is his will, or words of like import.

---

and the other twenty-five per cent should be divided equally among the following: Gari Hanson, Walker Nance, Malcolm O. Richberg, and Jimmy Attra; and that of the stock in the Waco store fifteen per cent of the stock owned by him should go to Paul Schroeter and eighty-five per cent should go to his wife, Jewel Hargis?

"Answer 'Yes' or 'No.'

"ANSWER: Yes.

"In connection with your answer to the foregoing question you are instructed that an oral will must be proved by the testimony of three credible witnesses, and the testimony of the three witnesses must agree, at least substantially, as to the words spoken by the deceased person or the dispositions made by him of his property.

"SPECIAL ISSUE NO. 2:

"Do you find from a preponderance of the evidence that in speaking the words pertaining to disposition of his property just prior to his death the deceased Paul Hargis spoke words attempting to give property to a person or persons other than those named in the written memorandum signed by Paul Schroeter and Doctor Holland and Doctor Futch?

"Answer 'Yes' or 'No.'

"ANSWER: No."

Section 86(c) provides:

"When the value of the estate exceeds Thirty Dollars, a nuncupative will must be proved by three credible witnesses that the testator called on a person to take notice or bear testimony that such is his will, or words of like import.

■ The foregoing provisions of our Probate Code have been a part of our statutory law since the days of the Republic. See An Act Concerning Wills, approved by the President of the Republic of Texas on January 28, 1840, Gammel's Laws of Texas, Vol. 2, p. 167-171. As long ago as 1857 it was held by this Court that to entitle a nuncupative will to probate three witnesses "must agree, at least substantially, to the words spoken, or the dispositions made by the deceased." Mitchell v. Vickers, 20 Texas (Reprint) 377, 385. The Court further said: "There can be no will, no disposition of the property, if the witnesses *cannot concur* as to what, in substance, was such disposition." The rule there stated appears to be one of universal recognition. Page on Wills, Vol. 2, Sections 404 and 902; Alexander's Commentaries on Wills, Vol. 1, Section 187.

■ The reason for the rule, as well as for strict enforcement of all statutory prerequisites to the probate of nuncupative wills, is perhaps best summed up in Thompson on Wills, 3rd Ed., Section 30, where it is said: "Even in jurisdictions where nuncupative wills are allowed they are not favored by the courts for the very obvious reason that they are at best uncertain productions, depending upon the attention, intelligence, memory and honesty of those surrounding the dying testator."

The record reflects that following a severe heart attack in Galveston, Texas, Paul Hargis, while in a hospital there and in extremis, called on Dr. E. D. Futch, one of the attending physicians, to write down what he had to say with respect to a disposition of property. The memorandum made by Dr. Futch, signed by him and by Dr. Lang F. Holland and Paul M. Schroeter, who were also present, as witnesses, and introduced in evidence on the trial is as follows:

"Galveston, Texas 1-29-56      12:30 P.M.
        Mr. *Paul Hargis*
    Personal stock in
    Austin Hargis Corp.
    divided as follows:
    50% to wife
    50% to employees

divided as follows:
1. Paul Schroeter 25%
2. Remainder equally between
   (a) Gary Hanson
   (b) Walker Nance
   (e) Malcom Richburg
   (f) Jimmy Attra
Waco stock
   15% to Paul Schroeter
   85% to wife."

Respondent offered the testimony of Dr. Futch, Dr. Holland, and Mrs. Pauline Hewett, an aunt of the deceased, to prove up the will.

The testimony of Dr. Futch is clear and unequivocal. He testified that Paul Hargis spoke slowly and distinctly, that he requested the witness to write down what was said with respect to the disposition made of the corporate stock, and that while he also made suggestions to his wife with reference to the sale of certain other personal property he spoke no words of a dispositive nature other than those recorded on the written memorandum. He testified that he read the memorandum back to Hargis and Hargis approved it.

Dr. Holland confirmed the speaking by Hargis of the dispositive words which were recorded by Dr. Futch. He testified also that "there was lots that was said that was not put down," that "there was a lot that was said that was not transcribed," that in reducing the words to writing they "only hit the high spots of his conversation;" but he remembered no words, other than those recorded, disposing of property. He particularly remembered no words spoken giving corporate stock to Frank Kutzenberger.

Mrs. Hewett testified positively that Hargis directed that the stock in the Austin corporation be divided 50% to his wife, 25% to Paul Schroeter, and 25% to Malcolm Richberg, Walker Nance, Jimmy Attra and Gary Hanson. We here quote all of the testimony of the witness which can have any bearing on the disposition made of stock in the Waco corporation.

"Q. Do you recall whether he said anything about the stock in the Waco store?

"A. Yes, he did.

"Q. And what did he say about it?

"A. He said a certain percent was to go to his wife, Jewel, and a certain percent to Paul Schroeter, and then he mentioned Mr. Kutzenberger.

"Q. But you don't recall what the percentages were?

"A. I think he said fifty percent to Jewel, and I can't be sure what he said to Paul Schroeter. I think I know but I can't be sure.

"Q. You are not sure of what he said about Jewel either, are you?

"A. Not quite. There is a little doubt about that. I think that is when I walked over there to Mr. O. D. Hargis.

"Q. Mr. O. D. Hargis?

"A. Yes, Mr. O. D. Hargis.

"Q. He was at the far part of the room, wasn't he?

"A. Yes, he was.

"Q. Where he was you couldn't hear very well, could you?

"A. I didn't hear at all.

" * * * *

"Q. Now, talking again about what disposition that this is supposed to have made, do you recall how many shares of stock in the Waco store Mr. Paul Hargis said he wanted to go to Mr. Kutzenberger?

"A. I think that was when I walked over to Mr. Hargis and I didn't get the number of shares.

"Q. Do you recall how many shares he said he wanted to go to Paul Schroeter?

"A. Not definitely.

"Q. Do you recall how many shares he said he wanted to go to his wife?

"A. Fifty percent. No, wait a minute, — I can't be sure of that now.

"Q. Right now you really don't know what disposition he made of the Waco store then?

"A. Well, I don't recall it right now. It was fresher on my mind before than it is now. I know what I think he said — I mean what disposition he made, but, as I say, I am under oath.

"Q. But you think it was fifty percent to his wife and the rest to Paul Schroeter and Mr. Kutzenberger?

"A. It could have been eighty-five percent to Jewel. I don't recall for sure.

"Q. And you are not sure how much he gave to Mr. Kutzenberger?

"A. I am not sure."

" *    *    *    *

"Q. So you don't really know what they put down on paper was what Mr. Hargis said or not?

"A. I know what he said about those shares was on that paper because I saw it.

"Q. Are you positive that it was put down exactly like he said it?

"A. Yes, sir, I think so.

"Q. Do you think so, or are you positive?

"A. Well, he told them what to put down and they wrote it down immediately after he said it, and I know I was right there· by the side of the doctor, and I could see it, and he wrote it down.

"Q. And you are positive that they put down exactly what he said and didn't leave any out?

"A. The shares.

"Q. They didn't leave any out?

"A. I don't know whether they left any out. I remember seeing shares, the percentages and then names by the side.

" * * * *

"Q. Well what did he dispose of that they didn't write down?

"A. He disposed of the shares of stock in his store and told them to write it down.

"Q. What else?

"A. And he mentioned the Waco store and told them to write it down.

" * * * *

"Q. One more question. Did you see the writing in Galveston at the hospital while it was being written down sufficiently to know at that time and to be certain thereof now that whatever that instrument said was what Paul stated with regard to disposition of the stock in the two companies, the Austin Company and the Waco Company?

"Mr. Lee: The answer is 'yes.'

" * * * *

"Q. Mrs. Hewett, just tell us what disposition of the Waco stock was made again, please.

"A. I told you that I missed what he gave Mr. Kutzenberger, because I walked over there to the cot to Mr. Hargis. If I remember right now, it seems to me that it was eight-five percent to Jewel, I can't be sure of that. I think it was eighty-five per cent.

"Q. But you don't know how much he gave Mr. Kutzenberger?

"A. No, I didn't hear that.

"Q. And you don't know how much he gave Mr. Schroeter?

"A. It seems to me like — I told you a minute ago that it was either eight-five or fifty to Jewel, and it seems to me it

was fifteen percent — I think I am positive about fifteen percent to Mr. Schroeter.

"Q. Then it must have been about fifty percent to Mrs. Jewel Hargis?

"A. Likely, that's right.

"Q. But you are not sure just what he left to Mr. Kutzenberger?

"A. I know he left him something, but I didn't get the number of shares."

■ It will be noted that Special Issue No. 1 coupled with the instruction following left it to the jury to determine whether the testimony of the three witnesses was in substantial agreement as to the dispositive terms of the will. That question is one for determination by the judge, as evidently the trial judge in this case realized when he rendered judgment notwithstanding the verdict of the jury. It is one which the judge should and normally will decide at the conclusion of the testimony and before any issue is made for jury determination. Unless the judge finds that at least three witnesses substantially agree on the terms of the will, there is no will, and there is nothing to submit to a jury. Neither is there a jury issue as to the terms of the will if only three witnesses purport to testify thereto and their testimony is in substantial agreement.

Special Issue No. 1 was not a proper jury issue in this case. It would have been a proper jury issue only if the three witnesses had been in substantial agreement as to the terms of the will as set out in the issue and other witnesses had denied that the dispositive words were spoken or had testified to a different disposition of the property. In that event there would have been testimony measuring up to the statutory requirement for establishment of the will offered for probate but the testimony would not have been conclusive, and whether such a will had in fact been made would have been a proper issue for the jury to decide from a preponderance of the evidence.

■ The authorities are quite generally agreed that the proof to admit a nuncupative will to probate must be of the clearest and most convincing character. Lewis v. Aylott, 45 Texas 190, 200; McClain v. Adams, 135 Texas 627, 146 S.W. 2d 373; Page on Wills, Vol. 2, Section 902; Priscilla E. Yarnall's Will, 4 Rawle

(Pa.) 46, 26 Am. Dec. 115, 121 ("Unless the court is morally certain of carrying the will of the deceased, and no other, into effect, it is obviously its duty not to give the will the sanction of its probate.")

The testimony of the three witnesses in this case supports the will offered for probate in so far as it purports to dispose of stock in Hargis-Austin, Inc. To that extent the will is supported by the positive testimony of Dr. Futch and the positive testimony of Mrs. Hewett. It is supported also by the testimony of Dr. Holland. We do not regard Dr. Holland's testimony that many things said by the testator were not recorded in the memorandum as indicating that the recorded dispositions were not made or that other dispositive words were spoken. He testified that the recorded dispositions were made and he remembered no others. All of the witnesses are agreed that at the time of speaking the dispositive words to Dr. Futch with respect to the corporate stock, or immediately following, the testator turned to his wife and made suggestions regarding the sale of an aeroplane and other property. The fact that the suggestions were made by the testator but were not recorded by Dr. Futch does not prevent Dr. Holland's testimony as to the dispositive words spoken from being in substantial conformity with the testimony of Dr. Futch and Mrs. Hewett.

On the other hand, the testimony of Mrs. Hewett with respect to the disposition made by the testator of the stock in Hargis Company, Inc. (the Waco corporation) is far too uncertain to form a sound basis for holding that it meets the requirements of the statute. It is not, in our opinion, in that substantial conformity with the testimony of Drs. Futch and Holland which the law requires. It is true that in answer to a general question she testified that "whatever that instrument [the memorandum] said was what Paul stated with regard to disposition of the stock in the two companies, the Austin Company and the Waco company," but it is quite clear from her testimony that she did not remember from the words spoken by the testator whether Mrs. Hargis was given eighty-five or fifty percent of the stock and it is equally clear that according to her best recollection Frank Kutzenberger was given some number of shares of the stock.

Applying the test hereinabove stated we must hold that the three witnesses were not in substantial agreement as to the disposition made of the stock in Hargis Company Inc. The fact

that they were in substantial agreement as to the disposition of the stock in Hargis-Austin, Inc. does not authorize probate of the will. Reid v. Wooster, 142 Ga. 359, 82 S.E. 1054.

The judgment of the Court of Civil Appeals is reversed and the judgment of the trial court is affirmed.

Associate Justice Griffin not sitting.

Opinion delivered October 29, 1958.

Rehearing overruled December 10, 1958.