In re DOUGLASS' ESTATE.

No. 3403.

Court of Civil Appeals of Texas.
Beaumont.

March 10, 1939.

Rehearing Denied March 15, 1939.

Gordon, Sharfstein, Bell & Weinert, of Beaumont, for appellants.

David E. O'Fiel, Jack M. Moore, and John H. Benckenstein, all of Beaumont, for appellee.

O'QUINN, Justice.

This appeal is from a judgment of the District Court of Jefferson County, Texas, probating the nuncupative will of Annie Douglass, deceased. Willie Adams was the proponent and Eliza McClain, Wiley Mosley, Alex Mosley, Wesley Mosley and Amos Mosley the contestants. They alleged that they were the next of kin to the deceased. They contested the application in the probate court, and on appeal to the district court. Certain other persons intervened but were dismissed from the suit.

The deceased, Annie Douglass, and proponent, Willie Adams, were Foster Sisters, in that Willie's mother died when she was quite small and in her last sickness she requested Millie Bankhead the mother of deceased to take her and raise her, which she did. They lived together most of their lives. Annie was 62 years old and Willie was then 54. They were both old ignorant negroes.

Annie became sick in 1930. She gradually grew worse, and in 1934 was practically helpless—she was then having some sort of "spells". This continued until she died on September 8, 1934. For 23 years and at the time of deceased's death Willie Adams and deceased had lived next door neighbors and Willie Adams had looked after and waited on deceased during her sickness.

On Thursday, September 6, 1934, Annie Douglass was sick in bed. About 4 o'clock, p. m. there were present in her sick room Willie Adams, Jeff Compton, Mildred Banks, Leonard Powell and Berttrue (called Mutt) McDaniel. McDaniel testified that he lived within two blocks of deceased. That he went to her house to pay her some rent that he owed her and that Powell went with him. That he stayed there some

two hours. That while he was there Annie Douglass, the deceased, said to him: " 'Mr. McDaniel, I am feeling not very well at this time, and I know that I am going to die,' and says, 'I want Willie Adams to have everything I possess, and land and money.' " She says, "She is the only one that stood to me in my sick hour at my bedside". Says, "I haven't any relatives at all." This was Thursday evening before she died on Saturday following. He said that a few days afterward, feeling an interest in what she said because of having known her for a long time, and being her friend, he wrote it down "for remembrance". It follows:

"Beaumont, Texas Sept. 12th. 1934. on the 6 day of September 1934 I was at Annie duglas home and she told me and others beside that at her death she wanted Willie Adams to have all that she had land and money and every thing else that she new she was going to die that she had no kin and she was the only one that sat at her bed side and waited on her and she wanted her to have all her estate at her death

"Berttrue McDaniel".

When asked to repeat in her own words what Annie Douglass said to him, he said: "She said she was feeling very bad at that time. She said she knew she wasn't going to live, she was going to die, said she wanted Willie Adams to have everything she possessed in land and money. Said she was the only one set at her bedside and done for her in her sickness and she had no relatives at all."

He testified that when he got to her house she was in bed sick. That he went for the purpose of paying her some rent he owed her, and that when he handed her the money, she handed him a receipt that she had already written. When asked what was the first thing she said after she handed him the receipt, he said: "Told me, Mr. McDaniels, I am not feeling well at all. I am just as sick as I can be, not feeling well at all. I am sure I am not going to live. Says, I wants Willie Adams to have everything I possesses in land and money, because she is the only one set by me at my sick bedside and cared for me." He was then requested by contestants' counsel to write certain words and expressions, which he did. After this it was admitted that he wrote the statement offered.

Mildred Banks testified that she had known Annie Douglass all of her life, and lived within a few blocks of her when she died. That she was present at her house on September 6, 1934, when she, Annie Douglass, was in bed sick, and made the statement testified to by McDaniel. She repeated the statement almost word for word as did McDaniel. She said Annie Douglass was having one of her spells at that time.

Jeff Compton testified that he lived "just a lot" from Annie Douglass, and was present on September 6, 1934, that he went to carry her some fruit. He testified that he heard the statement that she made to McDaniel, and repeated it substantially as stated by McDaniel.

Leonard Powell, a witness who was present at the time Annie Douglass made her nuncupative will, and who had testified at the hearing in the probate court, had died, and his testimony was reproduced, substantially to the same facts as the others.

None of the witnesses was related in any manner to either Annie Douglass, the deceased, or to Willie Adams, the proponent.

The first assignment of error is: "The trial court erred as a matter of law and to the prejudice of this appellant in rendering judgment decreeing the probate of the purported testamentary words of decedent, Annie Douglass, the undisputed evidence showing that such words were not uttered in the time of the last illness of the deceased."

This contention is based upon the fact that deceased uttered the words offered as her nuncupative will on Thursday September 6, 1934, at about 4:30 p. m. and died on Saturday September 8, at about 8:30 p. m. some 48 hours later. In other words, it is insisted that the words must have been uttered when deceased was actually in extremis. There is no conflict in the evidence as to the occurrence of the events. The question, under the facts, then is were the words uttered while Annie Douglass was "in her last sickness," as required by the statute. Article 3346, R.S.1925. Article 3346 provides that no nuncupative will shall be probated, "unless it be made in the time of the last sickness of the deceased." Texas has not adopted the rule of some states applying strict construction of the words "in the time of the last sickness of the deceased" to the effect that the person sick must then be in extremis—be dying.

We think the more reasonable rule to be that if a person deliberately makes a will in conformity to the statute, during the sickness of which he subsequently dies and while impressed with the probability of approaching death, such will should not be declared invalid because in point of fact the testator had time and opportunity to reduce it to writing. The purpose of the language in the statute, we think, was to preserve with approximate certainty the testamentary words uttered with intent to devise property, and to prevent fraud. There is no cavil as to the words uttered, nor can there be as to the intent of the testatrix. Nor is the lapse of time between the uttering of the words and the death of the testatrix such as to be denied effect by the statute, when it is shown that the testatrix stated she was going to die, and did not recover from her long standing affliction, and had constantly grown worse until the fainting, or weak spell she had but two days before her death, and the undisputed fact that she was still practically helpless from the time she uttered her testamentary words until her death. Under these facts, we think it could not be said that she was not in her last sickness when she made her will. The assignment is overruled.

The second assignment complains that the court erred as a matter of law in rendering judgment probating the nuncupative will because the undisputed evidence showed failure to prove by three credible witnesses that the testatrix called on some person to take notice or bear testimony that the words uttered were her will.

This assignment is overruled. While the record does not show that deceased called on any one in the very words to "take notice or bear testimony" to the words she was uttering as her will, it does show without dispute that she called McDaniel's attention to what she was saying. The law does not require that the attention of the witness be called in any specific words or way, but it is sufficient if the attention or notice is called in any manner to her utterances. There is no formal way or words that need be used. McDaniel begins his testimony by saying that Annie Douglass said to him: "Mr. McDaniel, I am, etc.," and repeated what she said. This was not denied by any one. It was a direct calling on him to hear what she had to say. The others heard her statement, and so testified. McDaniel within the time required by law (six days) reduced the testamentary words to writing, and the same was produced on trial. The other witnesses testified to the correctness of the writing as to its contents. This was sufficient. Walker v. Fields, Tex.Com.App., 247 S.W. 272.

The third and last assignment urges that the court erred as a matter of law in rendering judgment probating the nuncupative will of deceased because the testimony of the witnesses differed materially as to the testatrix calling upon some one to witness her will.

This assignment is overruled. We think the witnesses are in substantial accord on this point.

The judgment should be affirmed and it is so ordered. Affirmed.