IN THE

TENTH COURT OF APPEALS




 
 
 
 
 
 
 


 



No. 10-06-00360-CV

 

In the
Matter of the Estate of

Stephen
Ellis Alexander, Deceased

 

 

 

 



From the County Court at Law No.
2

McLennan County, Texas

Trial Court No. 2006-0814-CV2

 



Opinion



 








            This appeal involves the question of
whether the decedent Stephen Ellis Alexander made a nuncupative will before his
death or died intestate.  The trial court determined that Stephen died
intestate.  Appellant Ben C. Lambeth contends in four issues that: (1) the
court abused its discretion by denying his oral request for a continuance; (2)
the court erred by granting a summary judgment motion filed by Appellees Cheryl
and Deborah Alexander, Stephen’s sisters, because genuine issues of material
fact remain on each element of Ben’s claim that Stephen made a nuncupative
will; (3) the court abused its discretion by denying Ben’s motion for new trial
premised on the denial of his continuance request; and (4) the court abused its
discretion by denying his motion for new trial premised on the summary judgment
ruling.  We will affirm.

Background

            In April 2001, Stephen, Cheryl, and
Deborah each received a substantial inheritance when their paternal grandmother
died.[1] 
According to the terms of a testamentary trust established by their paternal grandfather
in his will, they were each to receive: (1) monthly payments of the net income
from their portion of the corpus; (2) partial distributions at the ages of
twenty-five (one-third of the corpus) and thirty (one-half of the remainder);
and (3) a final distribution at the age of thirty-five.[2] 
Stephen consulted with an attorney regarding the need to prepare a will.  They
discussed the matter on several occasions, but no will was ever executed.

            Stephen suffered from several chronic
conditions and was hospitalized at the Veterans Administration Medical Center in Temple from June 18 to July 8, 2002 for complications associated with these
conditions, exacerbated by alcohol abuse.  He allegedly made the nuncupative
will on July 4 while hospitalized in Temple.

            According to the affidavits of several
“friends,” Stephen was taken to the VA hospital in Waco for “a few days”
sometime after his release from the VA hospital in Temple because he was
retaining fluids.  “The staff drained some fluids, but finally sent him home
because they could do nothing else for his condition.”

            Stephen was taken by ambulance to
another Waco hospital on July 24 due to extreme intoxication.  He died two days
later.

            Cheryl filed an application to
determine heirship and for an independent administration of Stephen’s estate in
the constitutional county court of McLennan County.  Cheryl supported this
application with affidavits of heirship executed by herself, Deborah, Ben, and another
person, each of whom affirmed that the Cheryl and Deborah were Stephen’s sole
heirs and that he had died intestate.  The probate court approved the
independent administration of Stephen’s estate, granted letters of
administration to Cheryl, and declared Cheryl and Deborah to be Stephen’s sole
heirs.  Cheryl filed an inventory, appraisement, and list of claims for
Stephen’s estate which the court approved.

            Ben filed an application to probate
Stephen’s alleged nuncupative will a few months later.[3] 
Cheryl and Deborah answered Ben’s suit by denying the existence of a valid,
nuncupative will.  They filed a traditional summary judgment motion and a
no-evidence summary judgment motion.  The court granted the traditional summary
judgment motion and rendered a take-nothing judgment in their favor.

 

 

Continuance

            Ben contends in his first issue that
the court abused its discretion by denying his oral request for a continuance.

            If a continuance motion does not
comply with Rule of Civil Procedure 251, it will be presumed that the court did
not abuse its discretion by denying the motion.  See Villegas v. Carter,
711 S.W.2d 624, 626 (Tex. 1986); Phifer v. Nacogdoches County Cent. Appraisal Dist., 45 S.W.3d 159, 173 (Tex. App.—Tyler 2000, pet. denied).

            Ben’s oral continuance motion did not
comply with Rule 251, which requires that a continuance motion be “supported by
affidavit.”  Tex. R. Civ. P. 251. 
Accordingly, no abuse of discretion is shown, and his first issue is overruled. 
See Villegas, 711 S.W.2d at 626; Phifer, 45 S.W.3d at 173.

Nuncupative Will

            Ben contends in his second issue that the
court erred by granting Cheryl’s and Deborah’s traditional summary-judgment
motion because genuine issues of material fact remain on each element of his
claim that Stephen made a nuncupative will.[4]

            We conduct a de novo review of
a summary judgment.  Valence Operating Co. v. Dorsett, 164 S.W.3d
656, 661 (Tex. 2005).  “When the trial court does not specify the basis for its
summary judgment, the appealing party must show it is error to base it on any
ground asserted in the motion.”  Star-Telegram, Inc. v. Doe, 915 S.W.2d
471, 473 (Tex. 1995); accord Park v. City of San Antonio, 230 S.W.3d 860,
865-66 (Tex. App.—El Paso 2007, pet. denied).

            To prevail on a traditional summary-judgment
motion, the movant must demonstrate that there are no genuine issues of
material fact and that it is entitled to judgment as a matter of law.  See
Diversicare Gen. Partner, Inc. v. Rubio, 185 S.W.3d 842, 846 (Tex. 2005).  “[W]e take as true all competent evidence favorable to the nonmovant, and we
indulge every reasonable inference and resolve any doubts in the nonmovant’s
favor.”  Id.

            Section 65 of the Probate Code states
the requisites of a nuncupative will.

            No nuncupative will shall be
established unless it be made in the time of the last sickness of the deceased,
at his home or where he has resided for ten days or more next preceding the
date of such will, except when the deceased is taken sick away from home and
dies before he returns to such home; nor when the value exceeds Thirty Dollars,
unless it be proved by three credible witnesses that the testator called on a
person to take notice or bear testimony that such is his will, or words of like
import.

 

Tex.
Prob. Code Ann. § 65 (Vernon 2003).

Cheryl’s and Deborah’s summary-judgment motion
challenged virtually every element of Ben’s claim that Stephen had made a
nuncupative will.[5]  The
first challenged element concerns whether Stephen was “in the time of the last
sickness” when he made the alleged nuncupative will.  The rule in Texas has long been that the testator must be “in extremis” to make a valid nuncupative
will.  McClain v. Adams, 135 Tex. 627, 146 S.W.2d 373, 375 (1941).  “[A]
nuncupative will is not good, unless it be made by a testator when he is in
extremis, or overtaken by sudden and violent sickness, and has not time or
opportunity to make a written will.’”  Id., 146 S.W.2d at 374 (quoting Prince
v. Hazleton, 20 Johns. 502, 514 (N.Y. 1822)); see also 9 Gerry Beyer, Texas Practice: Texas Law of
Wills § 20.5 (3d ed. 2002); Michael J. Vaughn, Comment, The
Nuncupative Will, 18 Baylor L. Rev.
77, 82-83 (1966).[6]

            In McClain, the decedent had
called a tenant to her bedside on a Thursday afternoon and told him that she
knew she was about to die.  She then told him that she wanted her friend Adams to
inherit her estate.  The decedent’s activities were unclear between Thursday
afternoon and Saturday, but on Saturday the decedent went to a neighbor’s house
and a nearby grocery store before returning home, where she died that night.  See
McClain, 146 S.W.2d at 373-74.

            The court concluded: 

            Applying the approved rule to the
facts of this case, it is obvious that [the decedent] was not in extremis when
she uttered the words claimed to constitute her will.  Thereafter she had the
time, ability and opportunity to prepare or have prepared a written will. 
About that there is no dispute in the record.  Certain it is that she could
have attended to that matter on Saturday morning when she was able to transact
business and go in person to a store to purchase groceries.

 

Id. at
375.

            The lower court had held that “Texas
has not adopted the rule of some states applying strict construction of the
words ‘in the time of the last sickness of the deceased’ to the effect that the
person sick must then be in extremis—be dying.”  In re Douglass’s Est.,
126 S.W.2d 61, 63 (Tex. Civ. App.—Beaumont 1939), rev’d sub nom. McClain v.
Adams, 135 Tex. 627, 146 S.W.2d 373 (1941).  This holding was plainly
rejected by the Supreme Court.  See McClain, 146 S.W.2d at 375.  The
language of the statute has not changed in any significant way since McClain
was decided[7] and
our research has disclosed no subsequent decision altering the holding in McClain. 
E.g. Dabney v. Thomas, 596 S.W.2d 561, 564 (Tex. Civ. App.—Beaumont
1980, writ ref’d n.r.e.).

            Viewed in the light most favorable to Ben
the non-movant, the summary judgment record shows that Stephen suffered from
several chronic conditions which ultimately contributed significantly to his
death.  He allegedly made the nuncupative will while hospitalized in Temple for complications associated with these conditions.  He died eighteen days after
his release from the Temple hospital, with one brief intervening
hospitalization of “a few days.”

            Ben presented the affidavit[8]
of a nurse who reviewed Stephen’s medical records and reached the following
conclusions regarding the cause of his death:

Cause of Death - The
patient, Steven [sic] Ellis Alexander, died of an exacerbation of
these chronic illnesses.  From the date of his admittance to the VA Hospital in
 Temple, the patient had the same chronic condition that he died from at the Providence Health Center in Waco, Texas.  This was a continuing and ongoing ir-reversible [sic]
physical condition which could not be reversed and from which the patient
subsequently died.  Thus, Steven [sic] Ellis Alexander was under the same
continuing chronic illness from the date he entered VA Temple to the time of
his demise at Providence in Waco.  There was no intervening recovery in his
medical condition but instead there was a temporary abatement of
gastrointestinal hemorrhage.  Once the patient was released by the hospital in Temple he was not actively bleeding, but his medical condition remained the same.  This
condition at VA Temple was the same medical aliment [sic] that caused his
hemorrhaging, resulting in respiratory and cardiac arrest, and his death at
Providence Waco.

 

            However, the fact that the chronic
conditions which afflicted Stephen when he was admitted to the VA hospital in
Temple (and apparently many months before) were the very same chronic
conditions which substantially contributed to his death thirty-eight days later
is no evidence that Stephen was “in extremis” during his hospitalization in
Temple.  See McClain, 146 S.W.2d at 375.

            In fact, the Prince decision
which the Supreme Court quoted with approval in McClain specifically
addressed the issue of chronic illness in this context.

            If nuncupative wills can be permitted at all, in the cases of
chronic disorders, which make silent and slow, but sure and fatal approaches,
it is only in the very last stage and extremity of them.  In no other period
can such a disorder be deemed, within any reasonable construction of the
Statute of Frauds, a man’s last sickness.  Such diseases continue for months,
and sometimes for years.  In one of Captain Cook’s voyages he states that he
lost his first lieutenant, Mr. Hicks, near the conclusion of the voyage of
three years, and almost within sight of the English coast.  But he adds that as
his disease was the consumption, and as it existed when he left England, it might be truly said that he was dying during the whole voyage.  What would the
law call that man’s last sickness? Not the whole voyage surely, and probably it
would be narrowed down to the last day, and to the last hour of his existence. 
We must give a reasonable interpretation to the Statute, in reference to the
mischief, and to the remedy.  We cannot safely apply a man’s last sickness to
the whole continuance of a protracted disease, without giving to the Statute an
absurd construction.

 

Prince,
20 Johns. at 515-16 (quoted in part by Vaughn, 18 Baylor L. Rev. at 83).

            Although the Supreme Court did not
directly address the issue of chronic illness in McClain, it appears from
the lower court’s opinion that the decedent in that case died as a result of
complications from a chronic illness.

            Annie became sick in 1930.  She
gradually grew worse, and in 1934 was practically helpless—she was then having
some sort of “spells.”  This continued until she died on September 8, 1934.

   

In re Douglass’s Est., 126 S.W.2d at 62.

            We believe the holding in Prince
is the correct application of the “in extremis” rule to chronic illness.  Thus,
“in the cases of chronic disorders, which make silent and slow, but sure and
fatal approaches, it is only in the very last stage and extremity of them” that
a nuncupative will can be made.  Prince, 20 Johns. at 515 (quoted by
Vaughn, 18 Baylor L. Rev. at 83).

            Viewed in the light most favorable to
Ben, the summary judgment evidence conclusively establishes that Stephen was not
“in extremis” during his hospitalization in Temple.  Thus, the court properly
granted Cheryl’s and Deborah’s summary judgment motion on this element of Ben’s
claim.  Because summary judgment was proper on this element, we need not
address the other elements challenged in the motion.  See Star-Telegram, 915 S.W.2d at 473; Park, 230 S.W.3d at 865.  Accordingly, we overrule Ben’s second issue.

Motion for New Trial

            Ben contends in his third and fourth
issues that the court abused its discretion by denying his motion for new trial
which: (a) challenged the denial of his oral motion for continuance; (b)
responded to Cheryl’s and Deborah’s objections to his summary-judgment proof;
and (c) presented additional evidence in opposition to Cheryl’s and Deborah’s
summary-judgment motion.

            Because the court did not abuse its
discretion by denying Ben’s oral continuance motion, the court necessarily did
not abuse its discretion by denying a motion for new trial challenging that
ruling.

            We have already noted that the court
never ruled on Cheryl’s and Deborah’s objections to Ben’s summary-judgment
evidence.  Further, we have considered Ben’s evidence in our review of the
court’s judgment.  Thus, the court did not abuse its discretion insofar as it
overruled Ben’s motion for new trial with regard to those objections.

            “[A] trial judge may accept summary
judgment evidence filed late, even after summary judgment, as long as he
affirmatively indicates in the record that he accepted or considered it.”  Stephens
v. Dolcefino, 126 S.W.3d 120, 133 (Tex. App.—Houston [1st Dist.] 2003, pet.
denied).  Here, the court’s order denying Ben’s motion for new trial states in
pertinent part that the court reviewed “all the pleadings timely filed.”  There
is nothing in the record of the hearing on the motion for new trial or the
written order denying that motion which affirmatively indicates that the trial
court accepted the additional evidence proffered by Ben with the motion for new
trial.

            The court would have been well within
its discretion to consider this additional evidence or reject it.  From the
record before us, we cannot say that the court abused its discretion by denying
Ben’s motion for new trial insofar as that motion presented additional evidence
for the court’s consideration.[9]

            For these reasons, we overrule Ben’s
third and fourth issues.

Conclusion

We affirm the judgment.

 

FELIPE REYNA

Justice

Before Chief Justice
Gray,

Justice
Vance, and

Justice
Reyna

Affirmed

Opinion delivered and
filed January 30, 2008

[CV06]

 









[1]
              Stephen, Cheryl, and Deborah’s
grandfather died in 1962.  Their father predeceased their grandmother, but the
year of his death is not reflected in the record.

 





[2]
              Stephen, Cheryl, and Deborah
were each older than thirty-five when their grandmother died.





[3]
              In addition to Cheryl and
Deborah, Ben originally named the bank which holds most of Stephen’s funds in
trust, the attorney with whom Stephen consulted about preparing a will, and the
attorney’s law firm as defendants and alleged claims for civil conspiracy,
fraud, tortious interference with the rights of a beneficiary, and gross
negligence of counsel (due to counsel’s failure to draft a will for Stephen). 
Ben also requested that the case be transferred to a district court, which the
county court did.  In a prior appeal from the district court’s judgment, this
Court vacated the judgment and remanded the cause to the district court with
instructions to return the case to the county court.  In re Est. of Alexander,
188 S.W.3d 327, 332 (Tex. App.—Waco 2006, no pet.).  The other defendants were
ultimately non-suited.





[4]
              Cheryl and Deborah presented
similar claims in a no-evidence summary-judgment motion, but the court granted
only their traditional summary-judgment motion.





[5]
              Cheryl and Deborah alleged in their First Amended
Traditional Motion for Summary Judgment that they had conclusively established
their entitlement to judgment on the elements of: (1) whether Stephen was
experiencing his last sickness when he made the alleged nuncupative will; (2)
whether he made the will “at home or the place where he died”; (3) whether the
will could be proved by three credible witnesses; and (4) whether Stephen told Ben
“to take notice or bear testimony that such [was] his will, or words of like
import.”

 





[6]               Black’s Law Dictionary
defines the term “in extremis” as “[n]ear the point of death; on one’s
deathbed.”   Black’s Law Dictionary
792 (8th ed. 2004).





[7]
              The former article 8287 of the Revised Civil
Statutes of 1925 provided:

 

            Requisites.—No nuncupative will shall be established, unless it be
made in the time of the last sickness of the deceasd [sic], at his habitation
or where he has resided for ten days next preceding, except when the deceased
is taken sick from home and dies before he returns to such habitation; nor when
the value exceeds thirty dollars, unless it be proved by three credible
witnesses that the testator called on some person to take notice or bear
testimony that such is his will, or words of like import.

 

Act of Mar. 18, 1925, 39th Leg., R.S., § 1, art. 8287, in 2
Revised Civil Statutes of the State of Texas 2386-87 (Baldwin & Sons 1925)
(amended 1955) (current version at Tex.
Prob. Code Ann. § 65 (Vernon 2003)).

 





[8]
              Cheryl and Deborah filed
written objections to Ben’s summary-judgment evidence on the day before the
summary-judgment hearing.  However, the court did not rule on their
objections.  Therefore, we consider Ben’s summary-judgment evidence to be part
of the record.  See Mead v. RLMC, Inc., 225 S.W.3d 710, 714 (Tex. App.—Fort Worth 2007, pet. denied); Hogan v. J. Higgins Trucking, Inc., 197
S.W.3d 879, 883 (Tex. App.—Dallas 2006, no pet.).





[9]
              The additional evidence
consisted of an affidavit from the attending physician at Stephen’s death. 
This physician reiterated previously filed evidence that the chronic conditions
which afflicted Stephen when he was admitted to the VA hospital in Temple were the same chronic conditions which substantially contributed to his death.