

# IN THE
# TENTH COURT OF APPEALS

No. 10-08-00313-CV

JAMES A. SPAKES,

Appellant

 v.

THELMA J. WEBER,

Appellee

From the 249th District Court
Johnson County, Texas
Trial Court No. C200700397

## MEMORANDUM  OPINION

James Spakes filed suit against Thelma Weber for breach of contract in the County Court at Law No. 2 of Johnson County.  Spakes later filed a motion to transfer venue to a district court because his claim allegedly "involves title to land."  The statutory county court granted the motion and transferred the case to the district court. The district court granted Weber's summary-judgment motion, ruling that the contract is unenforceable and awarding Weber attorney's fees and costs.  Spakes contends in three issues that: (1) the district court's judgment is void because the statutory county

court did not have subject-matter jurisdiction when it signed the transfer order; (2) the attorney's fee award must be set aside because no statute authorizes the award and because Weber offered no evidence to support the award; and (3) Weber failed to conclusively establish her entitlement to judgment because: (a) she offered incompetent evidence, (b) genuine issues of material fact remain, and (c) the summary-judgment motion does not address all pending claims. We will affirm in part and reverse and remand in part.

### Background

The parties' dispute arises from the following handwritten agreement they both signed in October 2004.

> Thelma J. Weber agree's to sell James A Spakes Described Mobile Home on front of this Bill of Sale serial #102806 16´x 76´ Home for the amount of 1500.$^{00}$ James a Spakes has paid 1000.$^{00}$ Down and owes her 500.$^{00}$ more a copy of the cashier's ck in the amount of 1000.$^{00}$ Dollar's was paid and recieved by Thelma J. Weber 10-26-04 Thelma J. Weber agree to sign described home over to James A Spakes After the other 500.$^{00}$ Dollars in remainding Balance is paid the land at 5713 crest rd was already purchased By James A Spakes and put in her name for safe keeping during a health situation and she Thelma J. Weber agree's to sign it back over to him James a Spakes at a later date.[1]

Spakes filed suit against Weber in the statutory county court in April 2006 claiming that this is a contract for the sale of land and seeking specific performance and damages for Weber's alleged breach of contract.

Six months later, Spakes filed his motion to transfer venue. In the motion, he averred that venue was proper in Johnson County but that the statutory county court

---

[1] Actually, the quoted document includes two separate agreements: one for the purchase of the mobile home for $1,500 and one for the safekeeping of the land located at 5713 Crest Road. This case involves the latter agreement.

lacked subject-matter jurisdiction because his claim "involves title to land." He asked the statutory county court to transfer the case to a district court. Over Weber's objection, the statutory county court granted the motion.

Weber filed a traditional summary-judgment motion in district court alleging that she was entitled to judgment as a matter of law because: (1) the parties' agreement is properly characterized as an express or implied trust agreement; (2) Spakes did not perform within a reasonable period of time; (3) the agreement is unenforceable; and (4) the agreement should not be enforced because Spakes fraudulently transferred the property to Weber to defraud his creditors. The trial court granted Weber's motion, ruling that "the contract to reconvey the property is declared unenforceable." The court awarded Weber $19,764 in trial attorney's fees plus costs.

**Transfer**

Spakes contends in his first issue that the district court's judgment is void because the statutory county court did not have subject-matter jurisdiction when it signed the transfer order. Specifically, he argues that the statutory county court did not have subject-matter jurisdiction because "the issue of title was the primary dispute" in his suit.

Unless otherwise provided,[2] a statutory county court has the subject-matter jurisdiction prescribed by law for constitutional county courts. TEX. GOV'T CODE ANN. §

---

[2]    *Compare* TEX. GOV'T CODE ANN. § 25.2162(a) (Vernon 2004) (providing County Court at Law of Starr County with subject-matter jurisdiction over family law matters and "controversies involving title to real property" concurrently with district court) *with id.* § 25.1282(a) (Vernon 2004) (providing statutory county courts of Johnson County with concurrent family law jurisdiction); *cf. id.* § 26.043(4) (Vernon 2004) (constitutional county court does not have subject-matter jurisdiction in "a suit for divorce").

25.0003(a) (Vernon Supp. 2009). A constitutional county court does not have subject-matter jurisdiction to decide "a suit for the recovery of land." *Id.* § 26.043(8) (Vernon 2004). The statutory county courts of Johnson County in particular have the subject-matter jurisdiction prescribed for constitutional county courts and concurrent jurisdiction with district courts "in family law cases and proceedings." *Id.* § 25.0003(a), § 25.1282(a) (Vernon 2004). Thus, the statutory county courts of Johnson County do not have subject-matter jurisdiction in "a suit for the recovery of land." *Id.* § 26.043(8); *see Merit Mgmt. Partners I, L.P. v. Noelke*, 266 S.W.3d 637, 643 (Tex. App.—Austin 2008, no pet.).

"A suit 'for the recovery of land' is a suit that determines title," but this type of suit includes "more than simply disputes over the identity of the fee simple owner." *Merit Mgmt. Partners I*, 266 S.W.3d at 643; *see Pena v. Sling*, 135 Tex. 200, 140 S.W.2d 441, 445 (1940) ("an action to recover land has a well-known and definite meaning, and means an action in ejectment,[3] trespass to try title, or suit to recover the land itself"). Conversely, "a suit for specific performance of a contract to sell land is not one for the recovery of land." *Bachman v. Neal*, 180 S.W.2d 643, 644 (Tex. Civ. App.—Fort Worth 1944, writ dism'd); *see Chambers v. Pruitt*, 241 S.W.3d 679, 684 (Tex. App.—Dallas 2007,

---

[3] Notwithstanding the Supreme Court's reference to an "action in ejectment," we note that the Court has more recently recognized that (since 1840) the trespass-to-try-title statute (section 22.001 of the Property Code) "eliminated ejectment actions in Texas." *Martin v. Amerman*, 133 S.W.3d 262, 265 (Tex. 2004); *see* TEX. PROP. CODE ANN. § 22.001(b) (Vernon 2000) ("The action of ejectment is not available in this state."); *see also* Act approved Feb. 5, 1840, 4th Cong., R.S., § 1, 1840 Repub. Tex. Laws 136, 136, *reprinted in* 2 H.P.N. GAMMEL, THE LAWS OF TEXAS 1822-1897, at 310, 310 (Austin, Gammel Book Co. 1898) ("all fictitious proceedings in the action of ejectment shall be abolished" and "the methods of trying titles to land or tenements in this Republic shall be by action of trespass") (later codified as article 7364, Revised Civil Statutes of 1925).

no pet.) (suit for breach of oral contract for sale of land did not involve determination of title); *Brown v. Kula-Amos, Inc.*, No. 02-04-00032-CV, 2005 Tex. App. LEXIS 2227, at *7-11 (Tex. App.—Fort Worth Mar. 24, 2005, no pet.) (mem. op.) (forcible detainer suit based on contract for deed did not involve question of title).

As pleaded in Spakes's original petition, the suit alleged a breach of "a contract for the sale or transfer of land." This was not a suit for the recovery of land and was within the subject-matter jurisdiction of the county court.[4] *Id.*

Nevertheless, Spakes contends that his suit came to involve a determination of title because he sought a temporary restraining order prohibiting Weber from conveying the property during the pendency of the suit so the court could "render a decision as to his rights regarding ownership of the property." Although there is no record of a hearing (*ex parte* or otherwise) on Spakes's application for a TRO,[5] Spakes alleged in his motion to transfer venue that the county court denied the application based on the judge's opinion that the county court lacked jurisdiction because the case involved a title dispute.

A county court is authorized by statute to issue "all writs necessary for the enforcement of the jurisdiction of the court" including "writs of injunction." TEX. GOV'T CODE ANN. § 25.0004(a) (Vernon 2004). A temporary restraining order is one of three forms of injunctions which may be issued by a court. *See Riggins v. Thompson*, 96 Tex.

---

[4]     The term "county court" as used hereinafter refers to a statutory county court unless otherwise indicated.

[5]     The county court's docket sheet indicates that the TRO application was filed on September 14. The next entry on the docket sheet indicates that the motion to transfer venue was filed on October 5. The next entry is for an October 19 order setting a hearing on this motion.

154, 71 S.W. 14, 15-16 (1902); *City of Fort Worth v. Tarlton*, 151 S.W.2d 268, 269 (Tex. Civ. App.—Fort Worth 1941, no writ); *see also Brines v. McIlhaney*, 596 S.W.2d 519, 523 (Tex. 1980) ("A temporary restraining order is one entered as part of a motion for a temporary injunction"); 15 MIKE BAGGETT, TEXAS PRACTICE: TEXAS FORECLOSURE: LAW AND PRACTICE § 11.09 (2001) (identifying temporary restraining orders and temporary injunctions as the two available forms of "interlocutory injunctive relief").

A court's authority to issue injunctive relief is limited to cases in which the court has subject-matter jurisdiction. *See Medina v. Benkiser*, 262 S.W.3d 25, 27 (Tex. App.—Houston [1st Dist.] 2008, no pet.). We have already determined that the county court had subject-matter jurisdiction over Spakes's suit for breach of contract. Spakes's application for a TRO does not allege any new causes of action. Rather, he sought to prevent Weber from selling the property which is the subject of the alleged contract until his suit was adjudicated.[6] Thus, his application for a TRO did not operate to deny the county court of subject-matter jurisdiction.

The county court had subject-matter jurisdiction when it signed the transfer order. *See Francis v. Tex. Dep't of Criminal Justice-Institutional Div. Publ'n Reviewer*, No. 10-08-00154-CV, 2008 Tex. App. LEXIS 9382, at *6-7 n.7 (Tex. App.—Waco Dec. 17, 2008, no pet.) (recognizing that county court permissibly transferred lawsuit to district court even though county court had subject-matter jurisdiction); TEX. GOV'T CODE ANN. §

---

[6] Although Spakes characterized his lawsuit in the application for a TRO as a suit "regarding ownership" of the property, he unequivocally states in the application that his lawsuit "is an action for breach of a written contract."

74.121(b) (Vernon 2005) (authorizing transfer of suit from county court to district court). Accordingly, we overrule Spakes's first issue.

## Enforceability of Contract

Spakes contends as part of his third issue that Weber failed to conclusively establish her entitlement to judgment because: (1) Weber's summary-judgment evidence is incompetent; and (2) genuine issues of material fact remain on several of the claims in the summary-judgment motion.

Although Weber asserted several grounds in her summary-judgment motion, the trial court specifically ruled that the contract is unenforceable. Thus, our review of the summary judgment is limited to that issue. *Cf. In re Estate of Alexander*, 250 S.W.3d 461, 464 (Tex. App.—Waco 2008, pet. denied) ("When the trial court does not specify the basis for its summary judgment, the appealing party must show it is error to base it on any ground asserted in the motion.") (quoting *Star-Telegram, Inc. v. Doe*, 915 S.W.2d 471, 473 (Tex. 1995)). Weber alleged in the summary-judgment motion that the contract is unenforceable because it lacks consideration, mutuality of obligation, or a manner of acceptance by Spakes.

The enforceability of a contract is a question of law which we review de novo and without deference to the trial court. *El Expreso, Inc. v. Zendejas*, 193 S.W.3d 590, 594 (Tex. App.—Houston [1st Dist.] 2006, no pet.); *see Mickens v. Longhorn DFW Moving, Inc.*, 264 S.W.3d 875, 880 (Tex. App.—Dallas 2008, pet. denied) (enforceability of contract is question of law).

> Consideration is a bargained for exchange of promises. Consideration consists of benefits and detriments to the contracting parties. The detriments must induce the parties to make the promises and the promises must induce the parties to incur the detriments.

*Ulico Cas. Co. v. Allied Pilots Ass'n*, 262 S.W.3d 773, 790 (Tex. 2008) (quoting *Fed. Sign v. Tex. S. Univ.*, 951 S.W.2d 401, 408-09 (Tex. 1997)).

The agreement in question provides, "the land at 5713 crest rd was already purchased by James A Spakes and put in [Weber's] name for safe keeping during a health situation and she Thelma J. Weber agree's to sign it back over to him James a Spakes at a later date." Thus, Weber promised to keepsafe the land which Spakes had "*already* purchased . . . and put in her name" (emphasis added) and also promised to reconvey the land at some later unspecified date.[7] There is no corresponding, *contemporaneous* promise or detriment on Spakes's part. *See Trilogy Software, Inc. v. Callidus Software, Inc.*, 143 S.W.3d 452, 463 (Tex. App.—Austin 2004, pet. denied) ("past consideration is not good consideration") (quoting Jordan Leibman & Richard Nathan, *The Enforceability of Post-Employment Noncompetition Agreements Formed after At-Will Employment Has Commenced: The "Afterthought" Agreement*, 60 S. CAL. L. REV. 1465, 1528 (1987)); *accord Powerhouse Prods., Inc. v. Scott*, 260 S.W.3d 693, 697 (Tex. App.—Dallas 2008, no pet.). Nevertheless, the contract may still be enforceable despite its lack of mutual consideration.

"A bilateral contract is one in which there are mutual promises between two parties to the contract, each being both a promisor and a promisee." *Frequent Flyer*

---

[7] The agreement is dated October 26, 2004. According to Weber's summary-judgment affidavit, Spakes put the property in her name on October 27, 2003.

*Depot, Inc. v. Am. Airlines, Inc.*, 281 S.W.3d 215, 224 (Tex. App.—Fort Worth 2009, pet. denied). These mutual promises form the consideration for a bilateral contract and constitute the mutuality of obligation which characterizes such an agreement. *See id.* When there is only one promisor, this mutuality is absent, and the agreement constitutes a unilateral contract. *Id.*

A unilateral contract is unenforceable when the sole promisor has made an illusory promise, namely, "one that fails to bind the promissor because he retains the option to discontinue performance without notice." *Johnston v. Kruse*, 261 S.W.3d 895, 898 (Tex. App.—Dallas 2008, no pet); *accord Frequent Flyer Depot*, 281 S.W.3d at 224. But a unilateral contract is enforceable if the promise is treated as an offer and the promisee accepts that offer by performing the act requested by the promisor. *Johnston*, 261 S.W.3d at 899; *accord Frequent Flyer Depot*, 281 S.W.3d at 224-25.

Here, the agreement is silent regarding any act required of Spakes. There is no summary-judgment evidence that: (1) Weber requested Spakes to perform any act; or (2) Spakes performed any act which he believed would constitute acceptance of an offer. *Cf. Johnston*, 261 S.W.3d at 889-900 ("appellant was not required to, and did not perform any bargained-for acts").

For these reasons, the summary-judgment evidence conclusively establishes that the parties' agreement constitutes an unenforceable, unilateral contract. Thus, we overrule that portion of Spakes's third issue in which he contends that Weber failed to conclusively establish that the contract is unenforceable.

**Trespass to Try Title**

Spakes also contends as part of his third issue that the summary judgment is erroneous because Weber's summary-judgment motion did not address all pending claims, particularly, the trespass-to-try-title claim he pleaded in an amended petition filed on the day of the summary-judgment hearing.

Rule of Civil Procedure 63 requires any amended pleadings to be filed at least seven days before trial absent leave of court. TEX. R. CIV. P. 63. "A summary-judgment proceeding is a trial within the meaning of Rule 63." *Goswami v. Metro. Sav. & Loan Ass'n*, 751 S.W.2d 487, 490 (Tex. 1988); *accord Houtex Ready Mix Concrete & Materials v. Eagle Constr. & Envtl. Servs., L.P.*, 226 S.W.3d 514, 520 (Tex. App.—Houston [1st Dist.] 2006, no pet.). Under *Goswami*, we must presume the trial court granted leave, even if not requested, if (1) the summary judgment states that all pleadings were considered, (2) the record fails to show that the trial court did not consider the amended pleading and (3) there is not a sufficient showing of surprise or prejudice by the opposing party. *See Continental Airlines, Inc. v. Kiefer*, 920 S.W.2d 274, 276 (Tex. 1996); *Goswami*, 751 S.W.2d at 490-91; *Houtex Ready Mix*, 226 S.W.3d at 520.

Here, the summary judgment was not signed until twenty-nine days after Spakes's amended petition was filed. It states that the court granted the summary judgment "after considering the pleadings, summary judgment evidence, and the arguments of counsel." *See Continental Airlines*, 920 S.W.2d at 276; *9029 Gateway S. Joint Venture v. Eller Media Co.*, 159 S.W.3d 183, 187 (Tex. App.—El Paso 2004, no pet.); *Retzlaff v. Tex. Dep't of Criminal Justice*, 135 S.W.3d 731, 746 (Tex. App.—Houston [1st Dist.] 2003,

no pet.). The record provides no basis for us to conclude that the trial court did not consider the amended petition. *See Continental Airlines*, 920 S.W.2d at 276; *Houtex Ready Mix*, 226 S.W.3d at 520; *9029 Gateway*, 159 S.W.3d at 187. And Weber does not even contend that she was surprised or prejudiced by the late amendment. *See Goswami*, 751 S.W.2d at 490; *Houtex Ready Mix*, 226 S.W.3d at 520; *Jones v. Ill. Employers Ins. of Wausau*, 136 S.W.3d 728, 743 (Tex. App.—Texarkana 2004, no pet.). Thus, we presume the trial court granted Spakes leave to file his amended petition.

The summary judgment recites in pertinent part, "any relief requested by any party and not granted in this order is hereby DENIED. This order is a final and appealable order." Thus, the summary judgment is a final, appealable judgment which denied Spakes's contract claim and his trespass-to-try-title claim. *See Lehmann v. Har-Con Corp.*, 39 S.W.3d 191, 205 (Tex. 2001); *Ziemian v. TX Arlington Oaks Apartments, Ltd.*, 233 S.W.3d 548, 553 (Tex. App.—Dallas 2007, no pet.); *Kendziorski v. Saunders*, 191 S.W.3d 395, 402-03 (Tex. App.—Austin 2006, no pet.).

However, a trial court may not grant summary judgment on a claim not addressed in the summary-judgment motion. *Chessher v. Sw. Bell Tel. Co.*, 658 S.W.2d 563, 564 (Tex. 1983) (per curiam); *Roehrs v. FSI Holdings, Inc.*, 246 S.W.3d 796, 810 (Tex. App.—Dallas 2008, pet. denied); *Espeche v. Ritzell*, 123 S.W.3d 657, 663 (Tex. App.—Houston [14th Dist.] 2003, pet. denied); *see Lehmann*, 191 S.W.3d at 200 ("if a defendant moves for summary judgment on only one of four claims asserted by the plaintiff, but the trial court renders judgment that the plaintiff take nothing on all claims asserted, the judgment is final—erroneous, but final"). Thus, the court erred by granting summary

judgment on Spakes's trespass-to-try-title claim because that claim was not addressed in Weber's summary-judgment motion.[8] *See Lehmann*, 191 S.W.3d at 200; *Chessher*, 658 S.W.2d at 564; *Roehrs*, 246 S.W.3d at 812; *Espeche*, 123 S.W.3d at 665.

## Attorney's Fees

Spakes contends in his second issue that the attorney's fee award must be set aside because no statute authorizes the award and because Weber offered no evidence to support the award.

Weber sought attorney's fees under the Texas Trust Code in her summary-judgment motion. *See* TEX. PROP. CODE ANN. § 114.064 (Vernon 2007). The trial court rejected Weber's argument that the parties' agreement was a trust agreement. Apparently recognizing that attorney's fees are not available under this statute, Weber now claims that the award is proper under the Declaratory Judgments Act. However, Spakes did not assert a claim for declaratory relief in his pleadings.

"[W]hen a party pleads a specific ground for recovery of attorney's fees, the party is limited to that ground and cannot recover attorney's fees on another, unpleaded ground." *Smith v. Deneve*, 285 S.W.3d 904, 916 (Tex. App.—Dallas 2009, no pet.) (quoting *Kreighbaum v. Lester*, No. 05-06-01333-CV, 2007 Tex. App. LEXIS 4982, at *6 (Tex. App.—Dallas June 27, 2007, no pet.) (mem. op.)). Thus, there is no pleaded

---

[8]    Nevertheless, we are required to review the merits of this appeal as to Spakes's breach-of-contract claim which was addressed in Weber's summary-judgment motion. *See Bandera Elec. Coop., Inc. v. Gilchrist*, 946 S.W.2d 336, 336 (Tex. 1997) (per curiam); *Roehrs v. FSI Holdings, Inc.*, 246 S.W.3d 796, 810 (Tex. App.—Dallas 2008, pet. denied); *see also Espeche v. Ritzell*, 123 S.W.3d 657, 667-68 (Tex. App.—Houston [14th Dist.] 2003, pet. denied) (addressing merits of claims addressed in summary-judgment motion and reversing on claim not addressed).

basis on which Weber can rely to support the attorney's fee award. Accordingly, we sustain Spakes's second issue.

## Conclusion

We affirm that portion of the judgment determining that the parties' agreement is unenforceable. We reverse the judgment with regard to the award of attorney's fees and insofar it purports to deny Spakes's trespass-to-try-title claim. We remand this cause to the trial court for further proceedings consistent with this opinion.


FELIPE REYNA
Justice

Before Chief Justice Gray,
      Justice Reyna, and
      Justice Davis
      (Chief Justice Gray dissenting with note)*
Affirmed in part,
      Reversed and remanded in part
Opinion delivered and filed January 13, 2010
[CV06]

*      (Chief Justice Gray dissents. A separate opinion will not issue. He provides the following note: The case books are filled with cases that hold when the parties to an agreement execute multiple documents at the same time, the documents are construed together as the agreement of the parties. *See, e.g.*, *Jones v. Kelley*, 614 S.W.2d 95, 98 (Tex. 1981); *Miles v. Martin*, 321 S.W.2d 62 (Tex. 1959); West KeyCite 95k164 k (Construing Instruments Together). This case, however, is the first and only case that I have found or heard about in which a Court has held that a single writing, which is on the front and back of a single sheet of paper in which one side even references the other, is divided into two distinct and separate agreements. But that is what this Court has done. The parties did not ask for it. The parties did not brief or suggest that there were two separate agreements. The reader is just reading along and boom, there it is. So when the Court raises the issue in footnote one and, without reference to any legal authority to do so, divides the single writing into two agreements to be analyzed separately for enforceability of each, I have to wonder why and how. And that simple footnote controls the disposition of the appeal because it is undisputed that in what the Court contends is a different agreement, the other agreement, on the same piece of paper,

Spakes makes a promise to pay $500 to Weber. But according to the Court, and solely because they hold there are two different agreements, the Court holds that the promise of payment in one agreement is no consideration to support Weber's promise to convey the property back to Spakes in the other agreement. I disagree with the Court's analysis. I view this single document as one agreement. As such, there is mutuality of obligation (consideration) to support the agreement. Thus, Spakes's contention on appeal, that Weber's summary judgment evidence failed to establish that this element of a contract was missing and therefore Spakes's claim for breach of contract failed, should be sustained. But this is another case in a long and growing line of cases wherein the Court identifies an issue, or raises some matter, that the parties have not raised and then proceeds to analyze the issue without notice to the parties or giving the parties the opportunity to brief the issue. *See, e.g., In re Trend Gathering & Treating, LP*, 226 S.W.3d 478 (Tex. App.—Waco 2006, order) (Gray, C.J., concurring & dissenting); *Navasota Res., L.P. v. First Source Tex., Inc.*, 206 S.W.3d 791 (Tex. App.—Waco 2006, order) (Gray, C.J., dissenting); *In re Marriage of Eilers*, 205 S.W.3d 637, 647 (Tex. App.—Waco 2006, pet. denied) (Gray, C.J., concurring & dissenting); *In the Interest of Z.A.T.*, 193 S.W.3d 197, 215 n.2 (Tex. App.—Waco 2006, pet. denied) (Gray, C.J., concurring). I have repeatedly expressed my disagreement but have been unsuccessful in preventing them from continuing to re-lawyer the cases for the parties in this manner. *Id*. Accordingly, I respectfully dissent from both the procedure as used in this proceeding and the results thereof.)